This leaves only the question of damages. On this branch of the case the court below sustained the finding of the commissioner; and, in accordance with the rule stated by us in The Providence, 38 C. C. A. 670, 98 Fed. 133, 135, the result is, in effect, "successive and concurrent decisions of two courts in the same case" on what are mainly mere questions of fact. It is therefore not easily overthrown. The facts are sufficiently stated by the learned judge who sat in the district court in his opinion with reference to the exceptions taken by the parties to the commissioner's report. That report classified the damage into five items. Of course, there is an opportunity for differences of opinion with reference to particulars; but, in view of the straining which the ship received, there can be no doubt that the gross amount awarded was reasonable, and we need concern ourselves with only the practical result.

The damage which the ship received was repaired in a dock in England, and at the same time other work was done, to a very considerable amount. On this account the dock company claims that demurrage during the repairs should not have been allowed. The district judge, however, shows correctly that the other work was not required at that particular time, and that, as the ship was not laid off for that work, it might, in fact, never have been done. Ruabon S. S. Co. v. London Assurance [1900] App. Cas. 6, although relating to an adjustment of general average, lays down a rule which apparently supports that view of the law. However, for the reason already stated, to the effect that the gross allowance was plainly reasonable, we do not find it necessary that we should even impliedly adopt any rigid rule which would form a precedent for other cases. We approve the determination of the district court with reference to the amount of damages as a whole, without needing to criticise the several items which entered into it.

The decree of the district court is affirmed, with interest, and the costs of appeal are awarded to the appellee.

---

VINCENT v. HOGAN et al.

(District Court, S. D. New York. May 6, 1901.)

Negligent Discharge of Cargo.

> Where a bill of lading consigned a canal boat alongside of a steamer for the purpose of transferring a cargo of iron from the canal boat to the steamer, and the iron was properly put in slings in the hold of the canal boat, and two of the loads fell, from contact with the side of the ship, because there was no guy to control the slings in rising, the canal boat was not liable for the resulting loss.

Peter S. Carter, for libelant.
Wheeler & Cortis, for defendant.

BROWN, District Judge. The damage in this case is I think to be ascribed wholly to the lack of a proper guy and guy tender to keep the sling of iron from coming in contact with the side of the ship while being hauled up alongside. With this, neither the libel-

ant nor his men, as I understand the evidence, had anything to do. His part of the business, as I understand it, was to see that the iron was properly put in slings in the hold of the canal boat, and then it was the business of the stevedore to haul it properly on board. There is no evidence to discredit the fact that the iron was properly loaded and secured in the slings in the hold. Two of the loads fell from contact with the side of the ship because there was no guy to control the sling in rising. A guy would easily have prevented such contact. As it was the defendants' duty to provide this precaution, they must be held responsible for the damage.

I attach no importance to the alleged statements of the superintendent, that it was dangerous to unload from the canal boat by winches, and that the master of the canal boat should assume the responsibility of it, or that he did so. This is denied by the latter, and no witness confirms the superintendent beyond his mere statement to the master. It does appear that the superintendent at first desired him to unload on the dock, to which the master objected on account of the greatly additional expense. The bill of lading that was put in evidence shows that the canal boat was consigned alongside of the steamer, which imports that the discharge should be directly into the steamer, and such was the custom. The superintendent had no right, therefore, to require the canal boat to undergo the additional expense of discharging on the dock, nor would any statements made by him to the captain, as to responsibility, have any force to shift upon the canal boat any damages resulting from the lack of reasonable precautions in taking the cargo from the canal boat upon the ship by steam with the ship's appliances as was intended.

Decree for the libelant with costs, or with an order of reference if the damages are not agreed upon.

---

### THE NO. 6H.

### THE NO. 7H.

### THE ADMIRAL.

### THE JAMES D. LEARY.

(District Court, E. D. New York. April 16, 1901.)

**1. SHIPPING—VESSELS MOORED TO OTHERS—LIABILITY FOR NEGLIGENCE.**

Two scows owned by libelants were moored to the breakwater in Erie Basin by strong lines, which were sufficient to withstand any strain which such vessels would have put upon them had not the three respondent scows moored to them on the outside. The following morning the wind was high, and there was danger of the vessels breaking away, but the masters of respondent scows took no measures to assist in strengthening the fastenings. The masters of libelants' scows called out to them of the danger, but their suggestion was unheeded, and beyond that they did nothing. The lines finally parted, and libelants' scows were drifted against other objects, and sunk. *Held*, that, while the action of respondents in tying up to the other scows was lawful, and in accordance with the custom of the port, it was their duty, when the safety of all the vessels required it, to put out lines to assist in making them secure; that it was